UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JOHN SOLAK, *et al.*,

                      Plaintiffs,

        -against-                         3:17-CV-0704 (LEK/DEP)

THE HAIN CELESTIAL GROUP, INC.,
d/b/a SENSIBLE PORTIONS,

                      Defendant.

---

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    INTRODUCTION

Plaintiffs John Solak April 17, 2018and Jim Figger commenced this class action lawsuit against defendant The Hain Celestial Group, Inc., d/b/a Sensible Portions, individually and on behalf of all others similarly situated, alleging (1) breach of an express warranty; (2) deceptive acts or practices in violation of New York General Business Law ("G.B.L.") § 349 *et seq.*; (3) false advertising in violation of G.B.L. § 350 *et seq.*; (4) unfair and deceptive acts and practices in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (5) unlawful business acts and practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code .s 17200 *et seq.*; (6) fraudulent business acts and practices in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (7) misleading and deceptive advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* Dkt. No. 1 ("Complaint"). Claim one is brought on behalf of a nationwide class of "[a]ll persons within the United States who purchased Garden Veggie Straws during the Class Period" (the "Nationwide Class"); claims two and three are brought on behalf of

a "New York Subclass," comprised of "all Class members who purchased the Garden Veggie Straws in the state of New York;" and claims four through seven are brought on behalf of a "California Subclass," comprised of "all Class members who purchased the Garden Veggie Straws in the state of California." Id. ¶¶ 50–52.

Presently before the Court is Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Dkt. No. 6 ("Motion"); see also Dkt. Nos. 6-1 ("Memorandum"), 8 ("Opposition"), 9 ("Reply"), 13 ("Supplemental Notice"). For the reasons that follow, Defendant's Motion is granted in its entirety.

## II.   BACKGROUND

### A.  Factual Background

The facts in this section are drawn from the Complaint, and are taken as true for the purpose of deciding Defendant's Motion. Plaintiff Solak is an individual domiciled in New York and Plaintiff Figger is an individual domiciled in California. Compl. ¶¶ 15–16. Defendant is a Delaware corporation headquartered at 1111 Marcus Avenue, Lake Success, New York. Id. ¶ 17. Defendant produces, markets, distributes, and sells Garden Veggie Straws (the "Straws" or the "Product") "under its Sensible Portion™ brand to consumers throughout the United States." Id. In addition to using the words "garden" and "veggie" in the Product's name and logo—which itself includes a rendering of a "whole tomato"—Defendant packages the Straws in a bag (the "Packaging") which labels them a "VEGETABLE AND POTATO SNACK." Id. at 24–25. The front of the Packaging also contains a picture of a fresh tomato, a fresh potato, and fresh spinach, and the back of the Packaging claims that "[w]hat makes our snack so irresistible" is "[t]he combination of garden grown potatoes, ripe vegetables, and 30% less fat than the leading potato

chip." Id. ¶ 24. The ingredient list, which is located on the back of the Packaging, indicates that the Straws' five most abundant ingredients by weight are potato starch, potato flour, corn starch, tomato paste, and spinach powder (the "Primary Ingredients"), though Plaintiffs allege that the Straws contain only "trace amounts" of the latter two ingredients. Id. ¶ 26. These "vegetable byproducts" "completely lack the nutritional value of their whole vegetable counterparts." Id. ¶ 29. Pictures of the most relevant aspects of Defendant's Packaging can be seen below:



Id. ¶ 24–26.

Plaintiffs contend that the images and statements included on the Packaging "create[] the erroneous impression that the whole vegetables depicted in Defendant's Product's marketing and labeling is [sic] present in an amount greater than is actually the case." Id. ¶ 33. The Complaint therefore claims that the Straws are "misbranded" and that Defendant "is required to display the true percentage of vegetables in the product name on the front label," such that the Straws in their current form "cannot be legally manufactured, advertised, distributed, or sold in the [United States]." Id. ¶ 32–37.

Plaintiffs purchased the Product "on multiple occasions," and on all such occasions "saw and relied upon Defendant's marketing and labeling" both "prior to and at the time of purchase." Id. ¶¶ 40–41, 45–46. Plaintiffs paid a premium price for the Straws, which Defendant has been able to charge because of its representations that the Straws are a "smart and wholesome" snack that is "better-for-you" than alternatives (e.g., potato chips). Id. ¶¶ 12, 30. Had Plaintiffs known the "true nutritional and health qualities" of the Straws, they would not have purchased them. Id. ¶¶ 13, 43, 48. However, Plaintiffs represent that they would purchase the Straws in the future, so long as they could be assured that "Defendant's Product's marketing and labeling was truthful and not deceptive." Id. ¶¶ 43, 48.

### B.  Procedural Background

Plaintiffs filed their class action complaint on June 29, 2017. Compl. Defendant moved to dismiss the Complaint on September 11, 2017 under Rules 12(b)(1)[1] and 12(b)(6) of the Federal Rules of Civil Procedure. Mot. Defendant argues, first, that Plaintiffs' claims fail to satisfy the requisite "reasonable consumer" standard because the Packaging "contains factually true images and statements that are not likely to deceive a reasonable consumer." Mem. at 5. In addition, Defendant argues (1) that the Complaint fails to adequately identify the source of Plaintiffs' reliance on Defendant's Packaging and marketing; (2) that Plaintiffs failed to allege an actual injury; (3) that Plaintiffs failed to provide pre-suit notice of any alleged breach of warranty; (4) that Plaintiffs cannot maintain a warranty claim on behalf of the Nationwide Class; and (5) that Plaintiffs lack Article III standing to seek injunctive relief. Id. at 13–22. The Motion has since been fully briefed.

### III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the well-pleaded factual allegations contained in a complaint and draw all inferences in favor of the plaintiff, Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006), though "an

---

[1] Defendant's Motion requests "an Order dismissing Plaintiffs' Class Action Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure." Mot. at 1. However, as rightly pointed out in Plaintiffs' Opposition, Defendant's standing challenges refer to the Court's subject matter jurisdiction and are therefore properly considered under Rule 12(b)(1). Opp'n at 7.

allegation made indefinite or erroneous by other allegations in the same complaint is not a well-pleaded allegation," Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, Hughes v. Trans World Airlines, Inc., 409 US. 363 (1973). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the pleader has not demonstrated that he is entitled to relief, and the action is subject to dismissal. Id. at 678–79. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original) (quoting Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001)). Therefore, if presented with "two plausible inferences that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Id.

IV.     **DISCUSSION**

**A.  New York and California State Law Claims**

To state a viable claim for relief under either New York's or California's consumer

protection statutes, "[p]laintiffs must establish that [the] allegedly deceptive advertisements were

likely to mislead a reasonable consumer acting reasonably under the circumstances." Fink v.

Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted); Freeman v. Time, Inc.,

68 F.3d 285, 290 (9th Cir. 1995) (finding that a "reasonable consumer" standard applies to

claims under the UCL, FAL, and CLRA). This is an objective inquiry. Cohen v. JP Morgan

Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007).

Determining "whether a business practice is deceptive will usually be a question of fact

not appropriate for decision on demurrer." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th

Cir. 2008). However, Plaintiffs must allege "more than a mere possibility that the advertisement

might conceivably be misunderstood by some few consumers viewing it in an unreasonable

manner." Brod v. Sioux Honey Ass'n Coop., 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013)

(citations omitted). And "[i]t is well settled that a court may determine as a matter of law that an

allegedly deceptive advertisement would not have misled a reasonable consumer." Fink, 714

F.3d at 741 (citations omitted).

*1.  The Allegedly Misleading Statements*

The Court will proceed by examining each of the allegedly misleading representations in

turn, bearing in mind that when "determining whether a reasonable consumer would have been

misled by a particular advertisement, context is crucial." Fink, 714 F.3d at 742. Accordingly, the

Court must "view each allegedly misleading statement in light of its context on the product label

or advertisement as a whole." Belfiore v. Proctor & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y. 2015); see also Freeman, 68 F.3d at 290 ("Any ambiguity that [the plaintiff] would read into any particular statement [can be] dispelled by the promotion as a whole.").

### a. "Garden Veggie Straws"

Defendant's Packaging unambiguously states—and the Complaint itself recognizes—that each of the Straws' five Primary Ingredients are a direct byproduct of vegetables. Compl. ¶ 26. Therefore, it is in no way misleading for Defendant to call the Product "Veggie" straws, since that label truthfully captures the fact that Defendant uses vegetable-based products in the Straws' recipe. This is true even if certain of the Primary Ingredients are only present in the Product in "trace amounts." Id. By labeling the Product "Veggie" straws, Defendant makes no claim as to the amount or proportion of "Veggie" products incorporated in the Straws. On the contrary, that label simply presents the consumer with a factually true statement—that the Straws are somehow derived from vegetable-based products. See Sensible Foods, LLC v. World Gourmet, Inc., No. 11-CV-2819, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) (holding that a defendant's use of "the word 'veggie' in the name of its Veggie Straws, Veggie Chips, and Veggie Crisps products" is not misleading as a matter of law because those products were made primarily from potatoes and "[i]t is simply implausible–indeed, it strains the boundaries of the English language–to say that products made primarily from potatoes are not made of 'veggies'").

Nor is it misleading for Defendant to characterize the Product as coming from a "Garden," given that all of the Primary Ingredients may be derived from vegetables originally grown in a garden. In that regard, examining Defendant's labeling in light of Henderson v. Gruma Corp., No. 10-CV-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) is instructive. The

plaintiff in <u>Henderson</u> challenged, *inter alia*, two factual descriptions included in the labeling of the defendant's guacamole-flavored dip: first, that the dip was "Guacamole," and second, that it was made "With Garden Vegetables." <u>Id.</u> at *12. The district court held that labeling the product "Guacamole," even when accompanied by a clarification in smaller text that the product was a "flavored dip," could lead "a reasonable consumer [to] interpret Defendant's statements and label to imply that the product is indeed guacamole, which it is not." <u>Id.</u> As to the "With Garden Vegetables" claim, however, the court held as a matter of law that a reasonable person would not find that phrase misleading "within the context of the label as a whole," because the product contained "vegetables that can be grown in a garden." <u>Id.</u> Those vegetables included avocado powder (which comprised less than two percent of the total product), dehydrated onion, and garlic powder. <u>Id.</u>

Much like the avocado powder, dehydrated onion, and garlic powder described in <u>Henderson</u>, the potato starch, potato flour, corn starch, tomato paste, and spinach powder relevant to the present case are derived from "vegetables that can be grown in a garden." <u>Id.</u> Defendant's use of the word "Garden" in the Product label therefore constitutes a factually accurate representation, meaning that the entirety of Defendant's "Garden Veggie Straws" label captures precisely the nature of the Product on offer and is not an actionable misrepresentation.

### b.  "Vegetable and Potato Snack"

Similarly, the Court finds nothing misleading about Defendant's truthful and accurate characterization of the Product as a "VEGETABLE AND POTATO SNACK." As already indicated above, the Straws' two most prevalent ingredients by weight are potato-based, and all of the Straws' five Primary Ingredients are derived from potatoes, corn, tomatoes, or spinach.

Although "a representation need not be false to mislead a reasonable consumer, the representation must nevertheless be misleading or ha[ve] the capacity, likelihood or tendency to deceive or confuse members of the public." Romero v. Flowers Bakeries, LLC, No. 14-CV-5189, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016) (internal quotations omitted). No such capacity, likelihood, or tendency exists in the present case, given that the "VEGETABLE AND POTATO SNACK" descriptor fairly and accurately describes the most prevalent ingredients used to manufacture the Straws.

Federal courts sitting in both New York and California have routinely found as a matter of law that similarly-situated representations would not mislead a reasonable consumer. For example, the district court in Red v. Kraft Foods, Inc., No. 10-CV-1028, 2012 WL 5504011, at *2–3 (C.D. Cal. Oct. 25, 2012) [hereinafter Kraft] denied Plaintiffs' request for class certification after holding as a matter of law that the "true representation" "Made with Real Vegetables" was not misleading when included on a package of Vegetable Thins crackers because such a statement would not deceive a reasonable consumer "familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." Similarly, in Mantikas v. Kellogg Co., No. 16-CV-2552, 2017 WL 2371183, at *4 (E.D.N.Y. May 31, 2017), the court dismissed the plaintiff's claim that the phrases "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" violated either New York's or California's consumer protection statutes after taking into consideration that "the [p]roduct's packaging truthfully state[d] that the [c]rackers [we]re made with whole grain."

10

c.  Images of Fresh Vegetables

The Complaint argues that, by "prominently display[ing] pictures of *whole* tomatoes, spinach, and potatoes" on the front of its Packaging and in the Straws' logo, Defendant has misrepresented to consumers that the Straws contain significant amounts of whole vegetables. Compl. ¶¶ 25–26. However, considering Defendant's Packaging in its entirety, the Court finds that the images in question are not deceptive, and that they would not mislead any reasonable consumer. The allegedly offending pictures take up a remarkably small portion of the Packaging, and are amply overshadowed by both the "Garden Veggie Straws" label and by a far larger picture of the Straws themselves (which have even been enlarged to show texture). Id. ¶ 25. Together, those images take up nearly the entire front side of the Packaging, and make sufficiently clear to consumers the nature of the product they are bargaining for. They depict a processed, unnaturally-colored "straw" snack resembling a chip or crisp that, though derived from vegetable-based products, looks nothing even remotely like a fresh or ripe vegetable.

Furthermore, as was true in Workman v. Plum Inc., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015), "any potential ambiguity" that might arise about the Product's vegetable content as a result of the challenged picture "could be resolved by the back panel of the products, which list[s] all ingredients in order of predominance." See also Opinion & Order at 7, Davis v. The Hain Celestial Grp., Inc., No. 17-CV-5191 (E.D.N.Y. Apr. 3, 2018), ECF No. 18 (Davis) ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." (citing In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig., 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017))). In the present

11

case, the list of ingredients included on the Packaging makes abundantly clear that the Product

contains only processed derivatives of the pictured vegetables, and not the fresh vegetables

themselves. It therefore strains credulity that any consumer would honestly conclude that the

Product contains any non-processed vegetables, much less that a "reasonable" consumer might

do so. See Kraft, 2012 WL 5504011, at *4 ("[I]t strains credulity to imagine that a reasonable

consumer will be deceived into thinking a box of crackers . . . contains huge amounts of

vegetables simply because there are pictures of vegetables . . . on the box."); McKinnis v.

Kellogg USA, No. 07-CV-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (finding

that "[a] reasonable consumer, even on the most cursory review" of a box of cereal containing

depictions of fruit, "could not, as a matter of law, be misled into believing that the cereal contains

actual fruit").

d.   "Garden Grown Potatoes" and "Ripe Vegetables"

In order to properly evaluate Defendant's "garden grown potatoes" and "ripe vegetables"

representations, the entire relevant quotation must be considered within its context. The passage

in question, which is included in small font on the back of the Packaging, reads:

> **Snack Smart. Resist Less.** What makes our snacks so irresistible?
> The combination of garden grown potatoes, ripe vegetables, and 30%
> less fat than the leading potato chip provides a better-for-you snack.
> Next, we delicately season them with sea salt. Now you can satisfy
> your snack cravings in a smart and wholesome way.
>
> **Snack More. Guilt Less.** Our straws are not quite a chip, crisp, or
> stick. These airy, crunchy straw snacks allow for 38 straws per
> serving! That is why we call ourselves Sensible Portions®.

Compl. ¶ 24.

Plaintiffs argue that the above language—and specifically Defendant's references to "garden grown potatoes" and "ripe vegetables"—constitutes a misrepresentation with the capacity to mislead a reasonable consumer, because instead of "garden grown or ripe vegetables," the Straws contain only "highly processed byproducts of what were once vegetables." Id. ¶ 26. However, while Defendant's language is admittedly vague, it in no way asserts that consumers will *actually* find whole, ripe, garden grown potatoes, tomatoes, or spinach hidden among the Straws. On the contrary, the challenged statement claims only that Defendant's Product is "irresistible" because it "combin[es]" a variety of elements or traits that a potential consumer might find desirable, including a manageable amount of fat, potatoes grown in a garden, and ripe vegetables. That statement, though certainly ambiguous, is not a misrepresentation.

Even if the Product does not (1) contain *whole* potatoes or *whole* ripe vegetables, Id. ¶ 26; (2) share the same nutritional profile as potatoes or ripe vegetables, Id. ¶¶ 27–28; or (3) include more than "trace amounts" of certain vegetables, Id. ¶ 26, the ingredients used most predominantly to manufacture the Straws are nonetheless derived directly from potato- and vegetable-based products. Those products were all, at one time or another, contained in "garden grown potatoes" and/or "ripe vegetables." Therefore, there is nothing objectively untrue in Defendant's claim that the Product contains some "combination" of those goods. See Davis at 8–9 (finding as a matter of law that a manufacturer's representation that its juice was "cold-pressed" would not mislead a reasonable consumer because, though the juice was later pressurized and processed further, "'[c]old pressed' does not cease to be a truthful moniker for the juice simply because there were subsequent steps in the juice's production process").

To the extent that the ambiguity inherent in the challenged representation(s) might give rise to confusion, the rest of the Packaging would surely clear up any latent questions. See Freeman, 68 F.3d at 290 ("Any ambiguity that [the plaintiff] would read into any particular statement [can be] dispelled by the promotion as a whole."); Workman, 141 F. Supp. 3d at 1035 ("[A]ny potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA."). As already detailed above, the front of the Packaging includes a prominent color image of the Straws which, due to its size, central placement, and near-fluorescent color scheme, would surely be the first thing to capture a shopper's attention. Only once that potential consumer stopped, picked up the Product, turned it over, and read through the fine print on the back would (s)he encounter the unemphasized phrases "garden grown potatoes" and "ripe vegetables" tucked into a medium-length paragraph. And were that consumer to continue reading through that section of the Packaging, (s)he would also encounter the word "snack" six separate times, as well as two separate comparisons drawn between the Straws and regular chips. Compl. ¶ 24. That language would surely alert that consumer to the Straws' chip-like properties; and, to paraphrase the district court in Kraft, a reasonable consumer should be familiar with the fact of life that a chip-like snack is not composed primarily of fresh vegetables. 2012 WL 5504011, at *3. But assuming for the sake of argument that our "reasonable" consumer was still confused, (s)he could nonetheless refer to the ingredients list—located nearby and in nearly the same size font as the challenged language—which would resolve once and for all any ambiguity as to what (s)he should expect the bag to contain.

14

e. "Smart and Wholesome"

The Court finds nothing misleading or misrepresentative in Defendant's description of the Straws as "smart and wholesome." Courts in the Ninth Circuit have routinely held that, while "misdescriptions of specific or absolute characteristics of a product are actionable," Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 2011) (internal citations omitted), "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (quoting Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1005 (9th Cir. 2003)). Similarly, courts in the Second Circuit have determined as a matter of law that "generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely" cannot give rise to consumer protection claims under New York law. Fink, 810 F. Supp. 2d at 644; see also Leonard v. Abbott Labs., Inc., No. 10-CV-4676, 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012) (finding that "statements that are vague or either mere puffery or hyperbole such that a reasonable consumer would not view [them] as significantly changing the general gist of available information . . . are not material, even if they were misleading" (internal quotation marks omitted)).

Defendant's claim that the Straws are a "smart and wholesome" way of satisfying consumers' "snack craving[s]" constitutes just such a vague, non-specific, and generalized statement. It makes no explicit claims as to any of the Straws' specific characteristics, and cannot be interpreted on its own as a factual representation upon which a consumer might rely. Moreover, the context surrounding Defendant's use of the "smart and wholesome" language—specifically, the fact that the phrase (1) occurs as an unemphasized portion of a

15

medium-length paragraph written in small font on the back of the Packaging; and (2) refers explicitly to *snack* cravings—makes clear that no reasonable consumer would have relied on it alone as a complete characterization of the Product.

### f.  General Healthfulness

Throughout the Complaint, Plaintiffs argue that their decision to purchase the Product was premised on Defendant's deceptive and misleading marketing techniques, which generally represent that the Straws are both "healthful and nutritious." Compl. ¶¶ 2, 6, 12, 24, 26, 29, 61, 69, 77, 104, 109–10. The Complaint gives no indication that Defendant overtly stated anywhere on the Packaging that the Straws are either healthful or nutritious, but that omission is not necessarily dispositive. See Lam v. Gen. Mills, 859 F. Supp. 2d 1097, 1105 n.6 (N.D. Cal. 2012) ("While there is no indication that [plaintiff] expressly represented that [its] Fruit Snacks are 'nutritious,' that is hardly dispositive." ). Instead, the Complaint points to three statements or images (the "Healthfulness Representations") included on the Packaging which collectively gave rise to Defendant's "deceptive marketing campaign." Compl. ¶ 2. Those representations are: (1) the "garden grown potatoes" and "ripe vegetables" language, Id. ¶¶ 24, 26, 29, 61, 69, 77, 104, 109; (2) the "smart and wholesome" language, Id. ¶ 24; and (3) the picture of a whole tomato, a whole potato, and spinach leaves, Id. ¶¶ 12, 26, 69, 110. The Court has already examined each of these statements and/or images individually and determined as a matter of law that none has the capacity on its own to mislead a reasonable consumer. However, remembering the Fink court's guidance that "context is crucial" to the reasonable consumer inquiry, the Court will now examine whether, when considered collectively, those phrases misrepresent the

healthfulness of the Straws in a manner capable of misleading a reasonable consumer. 714 F.3d at 742. For the reasons that follow, the Court concludes that they do not.

The Healthfulness Representations in no way suggest to potential or actual consumers that the Straws contain the same nutritional content as the vegetables from which they are derived. In fact, the Healthfulness Representations make no explicit claims as to the objective or relative nutritional value of the Straws whatsoever.[2] They are therefore readily distinguishable from, for example, the representations examined by the court in Ackerman v. Coca-Cola Co., No. 09-CV-395, 2010 WL 2925955, at *5 (E.D.N.Y. July 21, 2010), which included claims that the product in question was a "Nutrient-Enhanced Water Beverage" "specially formulated" with essential and "healthy" vitamins and nutrients. By comparison, the most that can be said for the Healthfulness Representations is that they project a vague and potentially ambiguous picture of the Straws' nutritional properties.

However, the context provided by the rest of the Packaging is more than adequate to dispel that potential ambiguity, even when the Healthfulness Representations are considered collectively. Altogether, those three representations consist of only a small picture on the front of the Packaging and two unemphasized phrases written in small font on the back of the Packaging. They therefore occupy only a small fraction of the total space on the Packaging, and are thoroughly overshadowed by its other statements and images (e.g., the unnaturally "enlarged" and florescent-colored depiction of the Straws themselves, the oft-repeated description of the

---

[2]   Aside from the Nutrition Facts, the Packaging's only explicitly health-related representations are that the Straws contain "30% less fat than the leading Potato Chips," contain "No Artificial Flavors, Colors or Preservatives," and are "Gluten Free." Compl. ¶ 25. None of those claims are challenged by Plaintiffs in their Complaint.

Product as a "straw" "snack," the health-based comparisons drawn between the Straws and potato chips, etc.). No reasonable consumer would overlook the most prominent aspects of the Packaging—not to mention its nutrition label and ingredients list—zero in on a scant number of potentially ambiguous images and phrases, and thereby conclude that Defendant's processed straw snack would provide the same health benefits as the whole vegetables from which it is derived.

### 2. Plaintiffs' Arguments

In their Opposition and Supplemental Notice, Plaintiffs direct the Court to a number of cases ostensibly in support of their position. For the reasons set forth below, Plaintiffs' reliance on those cases is misplaced.

First, Plaintiffs cite to several cases—including Williams, 552 F.3d at 934; Lam, 859 F. Supp. 2d at 1097; and Ebin v. Kangadis Food Inc., No. 13-CV-2311, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014)—in support of their claim that Defendant's "unambiguous affirmative misrepresentation[s]" are alone "sufficient to state a claim." Opp'n at 10, 13.

In Williams, parents who purchased fruit juice snacks filed a class action complaint against their manufacturer, Gerber, alleging that the packaging—which contained, inter alia, (1) the words "Fruit Juice" next to images of various fruits whose juice was not included in the product; (2) the phrase "made with real fruit juice and other all natural ingredients," when the most prominent ingredients were corn syrup and sugar; and (3) the claim that the product was "one of a variety of nutritious Gerber Graduates foods and juices"—was misleading and liable to deceive a reasonable consumer. 552 F.3d at 936–37. The district court initially granted Gerber's motion to dismiss, but the Ninth Circuit Court of Appeals reversed because "there [we]re a

18

number of features of the packaging Gerber used for its Fruit Juice Snacks product which could likely deceive a reasonable consumer." Id. at 939. In light of that, and most notably because aspects of Gerber's packaging falsely represented the contents of the product to consumers, the appellate court found that the United States Food and Drug Administration ("FDA") does not "require[] an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." Id.

Similarly, the Lam court refused dismissal of a suite of consumer protection claims against the producer of a "fruit flavored snack" identified as "strawberry natural flavored" and promoted as "made with real fruit," because those "statements might lead a reasonable consumer to believe that [the] product [wa]s made with real strawberries, not pears from concentrate." 859 F. Supp. 2d at 1104. And the court in Ebin found that labeling a product as "100% Pure Olive Oil" when it actually contained "pomace" constituted a misrepresentation sufficient to survive summary judgment given the "numerous industry standards . . . distinguish[ing] pomace oil from olive oil." 2014 WL 737878, at *2.

But unlike in the present case, all of the defendant manufacturers in Williams, Lam, and Ebin made *false* representations on their packaging and marketing materials. Despite Plaintiffs' claims to the contrary, Opp'n at 10, the analysis set forth above makes clear that Defendant made no"unambiguous affirmative misrepresentation[s]." Therefore, Plaintiffs' reliance on Williams, Lam, and Ebin is inapposite.

Second, Plaintiffs cite to multiple cases that are distinguishable on factual grounds from the present matter. For example, Plaintiff cites to Bronson v. Johnson & Johnson, Inc.,

No. 12-CV-4184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) in further support of its claim

that the Packaging purveyed unambiguous affirmative misrepresentations. In <u>Bronson</u>, the

district court determined that a manufacturer's claim that its sugar packets contained "20% of the

daily value of antioxidant vitamins C & E, like those found in fruits and vegetables," when

accompanied by photos of berries, "create[d] the misleading impression that the vitamins are

derived from fruit or provide [ ] the same benefits as real fruit." <u>Id.</u> at *11 (internal quotation

marks omitted). But in reality, the vitamins included in the packets were derived from "ascorbic

acid and synthetically created vitamins," and the product did not have "the same health benefits

as consuming real fruit." <u>Id.</u>

 However, unlike the manufacturer in <u>Bronson</u>, Defendant made no express, affirmative

claims about the presence of beneficial vitamins or minerals in the Straws. Also, where the

manufacturer in <u>Bronson</u> represented that its product contained beneficial substances present in

healthy foods, Defendant has at most done the inverse—represented that its product does *not*

contain harmful substances to the same degree that comparable snacks do. Finally, the <u>Bronson</u>

packaging implied to consumers that the packets contained substances (vitamins and minerals)

derived from ingredients (berries) which, in reality, were not present in the product itself.

Defendant's representations, on the other hand, are all premised on its factually accurate claim

that the five most predominant ingredients in the Straws are vegetable-based. Thus, given those

distinguishing features, the <u>Bronson</u> court's reasoning does not apply to the present case.

 Plaintiffs' reliance on <u>Stoltz v. Fage Dairy Processing Industry, S.A.</u>, No. 14-CV-3826,

2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) is equally misplaced. The <u>Stoltz</u> court held that it

could not rule as a matter of law that a yogurt manufacturer's decision to label its product "Total

0%" would not be misleading to a reasonable consumer, because it provided consumers without "any context as to what the '0%' refers to." Id. at *4, 18–21. In so doing, the court rejected the defendant manufacturer's argument that the "background knowledge, experience and understanding of reasonable consumers" should mean that they "are accustomed to the use of percentages to denote the fat content of dairy products, are cognizant of the 'laws of chemistry and nutrition' as they pertain to lactose, and are aware that calories, carbohydrates, and sugar are not typically reported as a percentage." Id. at *20.

Unlike the Stoltz product label, however, Defendant's Product is sold under the factually accurate and unambiguous name of "Garden Veggie Straws." As already indicated above, that label provides a more-than-fair characterization of the Primary Ingredients used to manufacture the Product. Moreover, to the extent that the Packaging does include arguably ambiguous representations (e.g., the "smart and wholesome" language, the "garden grown potatoes" and "ripe vegetables" language, etc.), those representations are adequately clarified by the other statements and images included on the Packaging. Those clarifying representations meant that Defendant was not compelled to rely on—and the Court therefore has no reason to evaluate—an argument citing to a reasonable consumer's "background knowledge" or "experience and understanding." The Stoltz decision is therefore largely inapplicable to the present matter.

Third, in a Supplemental Notice filed on January 22, 2018, Plaintiffs specifically direct the Court's attention to Grabowski v. Dunkin' Brands, Inc., No. 17-CV-5069, 2017 WL 6059966 (N.D. Ill. Dec. 7, 2017), a district court decision from another circuit which the Plaintiffs believe to be persuasive. Suppl. Notice. The court in Grabowski found that the plaintiff had plausibly alleged that the defendant donut retailer deceptively sold products that, though called

21

"blueberry," "contain[ed] no actual blueberries and instead contain[ed] fake blueberries or blueberry pieces that mimic[ked] the color and shape of blueberries." 2017 WL 6059966, at *1. Thus, Plaintiffs cite to Grabowski for the proposition that "where a product's description does not match its actual contents, a reasonable consumer could be deceived." Suppl. Notice at 1. However, the Court has already determined that the allegations in the Complaint indicate that Defendant's descriptions of the Product either *do* match the Product's contents or are acceptably ambiguous. Plaintiff's reliance on Grabowski is therefore unavailing.

### 3. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs' New York and California consumer protection claims fail as a matter of law because the challenged statements and images are not misrepresentations and would not mislead a reasonable consumer. The Court therefore dismisses without prejudice claims two through seven in their entirety.[3]

### B. Allegations of Misbranding

In their Complaint, Plaintiffs claim that the Straws are "misbranded" under the FDCA. Compl. §§ 8, 32–34. However, while the FDCA empowers the FDA to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2), that statute incorporates "no private right of action." Izquierdo v. Mondelez Int'l, Inc., No. 16-CV-4697, 2016 WL 6459832, at *3 (S.D.N.Y. Oct. 6, 2016) (citing PDK Labs, Inc.

---

[3] Defendant also challenges Plaintiffs' consumer protection claims under New York and California law on the grounds that (1) the Complaint fails to adequately identify the source of Plaintiffs' reliance on Defendant's packaging and marketing; (2) Plaintiffs failed to allege an actual injury; and (3) Plaintiffs lack Article III standing to seek injunctive relief. Mem. at 13–15, 19–22. However, having found that Plaintiffs' claims fail as a matter of law on other grounds, the Court need not reach those alternative grounds for dismissal.

v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997)). "Rather, the FDA enforces the FDCA and

its regulations through administrative proceedings." Id. (citing 21 C.F.R. § 7.1 et seq.). The

Complaint accordingly does not bring any claims under the FDCA directly.

That said, the Complaint could be read as attempting to use Defendant's alleged FDCA

violation as a separate basis for supporting Plaintiffs' claims under both New York's and

California's consumer protection statutes. See Compl. ¶¶ 35 ("New York law forbids the

misbranding of food in language largely identical to that found in the FDCA. . . . Thus, the

Garden Veggie Straws are misbranded under New York law."), 36 ("Similarly, the Garden

Veggie Straws are misbranded under California's Sherman Law . . . [which] expressly

incorporates the food labeling requirements set forth in the FDCA.").[4] To the extent that it does

so, the Complaint counteracts the express language of the FDCA, which "leaves no doubt that it

is the Federal Government rather than private litigants who are authorized to file suit for

noncompliance" with its enumerated provisions. Buckman Co. v. Plaintiffs' Legal Comm.,

531 U.S. 341, 349 n.4 (2001); see also 21 U.S.C. § 337(a) ('[A]ll such proceedings for the

enforcement, or to restrain violations, of this chapter shall be by and in the name of the United

States."). Any state law claim premised upon violations of the FDCA therefore cannot survive a

motion to dismiss. See Verzani v. Costco Wholesale Corp., No. 09-CV-2117,

2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("[A plaintiff] cannot salvage a G.B.L. § 349

claim by alleging violations of federal law.").

---

[4]  Notably, the Complaint makes no mention of the FDCA when describing claims two
through seven (which state Plaintiffs' claims for relief under New York's and California's
consumer protection statutes), and neither Plaintiffs nor Defendant addressed the relevance of the
FDCA in their opposition or reply briefs.

### C. Express Warranty Claim

In addition to their New York and California consumer protection claims, Plaintiffs also assert claims for breach of an express warranty on behalf of the individual Plaintiffs and the Nationwide Class. Compl. ¶¶ 60–63. For the reasons set forth below, the Court dismisses without prejudice Plaintiffs' express warranty claims in their entirety.

#### 1. The Named Plaintiffs

In order to evaluate the validity of Plaintiff Solak's and Plaintiff Figger's express warranty claims, the Court must first determine which law applies to such claims. A federal district court "sitting in diversity must generally apply the choice of law rules of the state in which it sits." In re Coudert Bros., 673 F.3d 180, 186 (2d Cir. 2012). And when adjudicating contractual disputes like an alleged breach of express warranty, New York courts apply a "center of gravity" or "grouping of contracts" approach. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997). "Under this approach courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Id. (citing In re Allstate Ins. Co. & Stolarz, 613 N.E.2d 936, 81 N.Y.2d 219, 227 (N.Y. 1993)). But "[t]he traditional choice of law factors, the place of contracting and performance, are given the heaviest weight in this analysis." Id.

Plaintiff Solak resides in New York and purchased Defendant's Garden Veggie Straws from stores located in that state. Compl. ¶¶ 15, 39. Plaintiff Figger resides in California and purchased Defendant's Garden Veggie Straws from stores located in that state. Id. ¶¶ 16, 44. Therefore, New York and California law governs their respective breach of warranty claims.

24

Under New York law, "[t]o prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'" Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC, 382 F. App'x. 110, 111–12 (2d Cir. 2010) (quoting Schimmenti v. Ply Gem Indus., Inc., 549 N.Y.S.2d 152, 154 (App. Div. 1989)). Similarly, "[t]o prevail on a breach of express warranty claim under California law, a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (internal quotation marks omitted). Representations included on a product label can create an express warranty in either state, but will not do so if they are "of such a general nature that a reasonable consumer would not rely on [them] as a statement of fact regarding the product." Simmons v. Washing Equip. Techs., 912 N.Y.S. 2d 360, 361 (App. Div. 2010) (internal quotation marks omitted). "Thus, although an express warranty claim is not analyzed under the reasonable consumer standard, it is analyzed by reference to a reasonable consumer's interpretation of, and reliance on, a defendant's representations." Atik v. Welch Foods, Inc., No. 15-CV-5405, 2016 WL 5678474, at *13 (E.D.N.Y. Sept. 30, 2016); see also Forouzesh v. Starbucls Corp., No. 16-CV-3830, 2016 WL 4443203, at *4 (C.D. Cal. Aug. 19, 2016) ("Plaintiff's interpretation of the promise is contradicted by the well-pleaded facts, his understanding of the bargain is contrary to that of a reasonable consumer, and Plaintiff has failed to plausibly allege that Defendant breached nay express warranty it may have offered.").

25

In describing their express warranty claims, Plaintiffs' Complaint states that:

> Defendant expressly warranted in its marketing, labeling, and promotion of the Garden Veggie Straws that the Garden Veggie Straws contain "garden grown potatoes" and "ripe vegetables" and are nutritious, and healthful to consume. These statements are untrue as detailed above. The promise of whole vegetable content, and the nutritious and healthful nature of the Garden Veggie Straws, specifically relates to the goods being purchased and became the basis of the bargain.

Compl. ¶ 61. Thus, Plaintiffs seem to refer once again to the three Healthfulness Representations, arguing that those statements and images gave rise to a general impression as to the "healthful nature of the Garden Veggie Straws" which became the basis of their bargain with Defendant. Id. In its Memorandum, Defendant erroneously counters that warranty claims in both New York and California "must be assessed under a reasonable consumer standard," such that Plaintiffs' express warranty claims should fail because the Packaging is both "accurate and unlikely to deceive a reasonable consumer." Mem. at 16.

While the Court agrees with Defendant that the Healthfulness Representations would not deceive a reasonable consumer, its analysis is premised on those representations' ambiguity, not their accuracy. Nonetheless, the caselaw makes clear that for a statement or representation to provide the basis for an express warranty claim, it still must meet the threshold requirement of "be[ing] material to a reasonable consumer." ConAgra Foods, 90 F. Supp. 3d at 985; see also Singleton v. Fifth Generation, Inc., No. 15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016) (stating that whether the plaintiff's "interpretation of the label was erroneous or reflected a promise made by [the d]efendant necessarily depends on what a reasonable consumer would believe" (citations omitted)). Therefore, Defendant's arguments with respect to the deceptive

qualities of the Healthfulness Representations under New York's and California's consumer protection statutes apply equally to the express warranty analysis. And because those three representations, even when considered collectively, are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiffs as grounds for asserting a breach of express warranty under either New York or California law. Plaintiffs' express warranty claims shall therefore be dismissed without prejudice.[5]

### 2. The Nationwide Class

In describing the prerequisites to a class action lawsuit, Rule 23 of the Federal Rules of Civil Procedure allows "[o]ne or more members of a class [to] sue or be sued as representative parties on behalf of all members." Fed. R. Civ. P. 23(a). Therefore, because Plaintiff Solak's and Plaintiff Figger's breach of express warranty claims were dismissed, the express warranty claims brought on behalf of the Nationwide Class must also be dismissed without prejudice.[6] If Plaintiffs can identify new class representative(s) whose express warranty claims would not be futile, they may replead an express breach of warranty claim on behalf of the new class representative(s) and the Nationwide Class.

## V.    CONCLUSION

Accordingly, it is hereby:

---

[5] Defendant also challenges Plaintiffs' express warranty claims under New York and California law on the grounds that Plaintiffs failed to provide Defendant with pre-suit notice. Mem. at 16–17. However, having found that Plaintiffs' claims fail as a matter of law on other grounds, the Court need not reach that alternative ground for dismissal.

[6] Defendant also challenges Plaintiffs' ability to bring an express warranty claim on behalf of a nationwide class. Mem. at 17–19. However, having once again found that Plaintiffs' claims fail on other grounds, the Court need not reach that alternative ground for dismissal.

**ORDERED**, that Defendant's Motion (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file an amended complaint as directed above **within thirty days** from the date of the filing of this Decision and Order; and it is further

**ORDERED**, that if Plaintiff fails to file an amended complaint **within thirty days** from the filing date of this Decision and Order, the Clerk is directed to enter Judgment indicating that this action is dismissed without prejudice, without further order of this Court; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:        April 17, 2018
                    Albany, New York

Lawrence E. Kahn
U.S. District Judge